IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FELICIA S. WICKLIFF, | CIVIL NO. 20-00264 JAO-RT |
| Plaintiff, | |
| vs. | ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

**ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Felicia S. Wickliff ("Plaintiff") appeals Defendant Andrew M. Saul, Commissioner of Social Security's (the "Commissioner") denial of her application for social security disability benefits.  She asks the Court to reverse the Commissioner's finding that she is not disabled and remand the matter for a new administrative hearing.   For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this Order.

## I.    ADMINISTRATIVE PROCEEDINGS

In August 2018, Plaintiff filed an application for social security disability benefits.  ECF No. 11-6 at 2.  The Social Security Administration ("SSA") denied

her application.  ECF No. 11-5 at 3–7.  Plaintiff sought reconsideration, *id.* at 8–10, and the SSA again denied her request.  *Id.* at 11–13.

At Plaintiff's request, the Administrative Law Judge ("ALJ") convened a hearing.  *Id.* at 41.  Relevant to this appeal, Plaintiff testified at the hearing that her "biggest problem" is her depression and that the resulting "insomnia is really -- the worst part is being able to try to function the next day after not sleeping at night." ECF No. 11-3 at 43–44.  She described how, between November 26, 2015 and December 31, 2017,[1] her "insomnia was pretty bad," but "alcohol helped [her] sleep."  *Id.* at 49.  Plaintiff indicated that her general condition did not improve when she stopped drinking.  *Id.* at 52.  When addressing her mental status between 2015 and 2016, Plaintiff explained that her insomnia "is really what ma[de] it hard for [her]," that she "w[o]ke up . . . tired [and] exhausted," and that "[d]uring the day, all [she would] do is think about sleeping."  *Id.* at 53.

Upon the ALJ's questioning about whether she would be able to show up to a civilian job five days a week, Plaintiff answered, "probably not on time."  *Id.* at 59–60.  Plaintiff explained that when she was in the Air Force,[2] she was sometimes

---

[1]  December 31, 2017 was Plaintiff's date last insured, which is relevant because, as explained below, the ALJ's analysis of Plaintiff's eligibility for benefits was based on whether she was disabled between November 26, 2015 (the day after the period covered by the previous final prior determination of Plaintiff's disability status) through her date last insured.  ECF No. 11-3 at 17–18.

[2]  Plaintiff left the Air Force in 2012.  ECF No. 11-3 at 39, 50.

"hours" late to work due to over-sleeping, and that this would occur at least three times per month, which led to her demotion in rank.  *Id.* at 60.

The ALJ later posed a hypothetical to the vocational expert, inquiring whether a person who would be late to work about three times per month for up to three hours each time would be able to sustain employment.  *Id.* at 61.  The vocational expert answered that such a person could not sustain any job in the national economy.  *Id.*

On February 7, 2020, the ALJ issued his decision, *id.* at 17–27 (the "Decision"), finding and concluding as follows:

- Plaintiff did not engage in substantial gainful activity during the period between November 26, 2015 through her date last insured of December 31, 2017 (the "Disability Period").  *Id.* at 20.

- Plaintiff's severe impairments during the Disability Period included major depression, recurrent; trauma and stressor related disorder (PTSD); and alcohol use disorder.  *Id.*

- During the Disability Period, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  *Id.*

- During the Disability Period, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:  no customer service interaction with the public; occasional interaction with coworkers; can understand, follow, and retain simple instructions and perform simple tasks (defined as nothing above an SVP 2) in a non-production pace workplace; no hazardous machinery or unprotected heights; and no ladders, ropes, or scaffolds.  *Id.* at 22.

3

- Plaintiff was unable to perform, and did not have any, past relevant work during the Disability Period. *Id.* at 26.

- There were jobs existing during the Disability Period in significant numbers in the national economy that Plaintiff could perform, based on her age, education, work experience, and RFC. *Id.*

- Plaintiff was not under a disability during the Disability Period. *Id.* at 27.

The ALJ also expressed doubt about Plaintiff's credibility:

> As for [Plaintiff]'s statements about the intensity, persistence, and limiting effects of his or her [sic] symptoms, they are inconsistent because despite [Plaintiff]'s *reported difficulty with concentration, memory problems, insomnia, and resulting inability to function*; the medical evidence during the period beginning November 26, 2015 through the date last insured of December 31, 2017 shows sporadic, and limited treatment, with a large gap in regular mental health treatment . . . not supportive of the severity of limitations reported.

*Id.* at 23 (emphasis added). The ALJ also pointed to therapist reports of Plaintiff's presentation during therapy sessions and Plaintiff's representations that she was independent, refused caregiver services, and, by September 2016, "functioned well." *Id.*

The ALJ's Decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review of the Decision. *Id.* at 2.

## II.   LEGAL STANDARDS

### A.   Standard of Review

The decision of the Commissioner must be affirmed "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citation omitted).

"Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  To determine whether there is substantial evidence to support the ALJ's decision, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted).  If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be affirmed.  *See Hiler v. Astrue*, 687 F.3d 1209, 1211 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." (citation omitted)); *Burch*, 400 F.3d at 679.  The ALJ, as the finder of fact, is responsible for weighing the evidence, resolving conflicts and ambiguities, and determining credibility.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Even where legal error occurs, the decision must be upheld "where that error is harmless, meaning that it is inconsequential to the ultimate nondisability

5

determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citation omitted).

### B.    Eligibility for Disability Benefits

To be eligible for disability insurance benefits, a claimant must demonstrate that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, it may only be determined that a claimant is under a disability "if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Only disabilities existing before the date last insured establish entitlement to disability insurance benefits.  *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

A five-step analysis is employed in evaluating disability claims.

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not

6

disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch*, 400 F.3d at 679; *see* 20 C.F.R. § 404.1520. It is the claimant's burden to prove a disability in steps one through four of the analysis. *See Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citation omitted).

## C.   Credibility Determinations

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted); *see Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." (citation omitted)); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The Ninth Circuit has

established a two-step analysis for determining the extent to which a claimant's

symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, *the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet*: The clear and convincing standard is the most demanding required in Social Security cases.

*Trevizo*, 862 F.3d at 1000 (emphasis added) (quoting *Garrison*, 759 F.3d at 1014–

15) (footnote omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir.

2012) (identifying two-step analysis in assessing the credibility of a claimant's

testimony regarding the subjective pain or intensity of symptoms); *Vasquez v.

Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028,

1036 (9th Cir. 2007). While the ALJ need not believe every allegation regarding a

claimant's symptoms, *see Molina*, 674 F.3d at 1112, the ALJ must support

credibility determinations with sufficiently specific findings to allow the Court to

conclude that the ALJ did not arbitrarily discredit a claimant's testimony. *See*

*Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*,

947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).

### III.   DISCUSSION

Plaintiff appeals the ALJ's conclusion that she is not disabled, and only

challenges the ALJ's determinations as to step five, i.e., the ALJ's conclusion that

Plaintiff had the RFC to perform substantial gainful activity in the national

economy.  Only the second step of the ALJ's credibility analysis is at issue in this

case as the ALJ found that Plaintiff's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms."  ECF No. 11-3 at 23.

Plaintiff frames the issue before the Court as follows:  "Whether the ALJ

failed to provide specific, clear and convincing reasons to reject [Plaintiff]'s case

dispositive testimony?"  ECF No. 14 at 13.  Specifically, Plaintiff contends that the

ALJ rejected her testimony regarding her insomnia "without comment."  *Id.*  She

further argues that the ALJ failed to support with clear and convincing evidence his

rejection of Plaintiff's testimony that she would be unable to arrive on time to

work regularly due to her insomnia based on the fact that she was several hours

late three times a month at her previous job.  *Id.* at 15–16.  Plaintiff refines and

extends her challenge to the ALJ's credibility determination in her Reply Brief,

arguing that the ALJ failed to identify the testimony he found not credible and link

that testimony to the portions of the record supporting his non-credibility

determination.  ECF No. 21 at 12 (citations omitted).

A.    **Identification of the Discredited Testimony**

Plaintiff argues that the ALJ rejected her testimony regarding her insomnia

without identifying the testimony he found incredible.  ECF No. 21 at 12.  The

Commissioner counters that the ALJ offered specific bases to find Plaintiff

incredible.  ECF No. 16 at 23.

In order to discredit testimony regarding a claimant's symptoms, the ALJ

must "identify the testimony she found not credible" and "link that testimony to the

particular parts of the record supporting her non-credibility determination."

*Brown-Hunter*, 806 F.3d at 494.  A "finding that a claimant's testimony is not

credible must be sufficiently specific to allow a reviewing court to conclude the

adjudicator rejected the claimant's testimony on permissible grounds and did not

arbitrarily discredit a claimant's testimony regarding pain."  *Id.* at 493 (internal

quotation marks and citation omitted).

*Brown-Hunter* is instructive.  There, the court held that the ALJ made the

"conclusory statement" that "the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not credible to the extent

they are inconsistent with the above residual functional capacity assessment."  *Id.*

(internal quotation marks and citation omitted).  The court concluded that the

10

ALJ's failure to identify "which of [the claimant]'s statements she found not credible and why" constituted legal error, and was not harmless.  *Id.* at 493–94.

A recent case from this District applied *Brown-Hunter* to facts similar to those here and reversed the ALJ's decision.  In *Ignacio v. Saul*, Civ. No. 19-00628 JMS-KJM, 2020 WL 4698806 (D. Haw. Aug. 13, 2020), the ALJ "provide[d] a thorough summary of [the] [c]laimant's testimony" and found that the "[c]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported by the medical evidence," but "fail[ed] to articulate *which* of [the] [c]laimant's statements were inconsistent with the medical records."  *Ignacio*, 2020 WL 4698806, at *5 (internal quotation marks and citation omitted).  The court determined that even though the ALJ provided "extensive and thorough summaries of the medical records," the ALJ did not articulate why he rejected the claimant's testimony that she could stand for only three hours at a time without needing to change positions and that she could only lift about five pounds.  *Id.*  The court concluded the ALJ committed legal error by summarizing the administrative record in support of his RFC determination without providing clear and convincing reasons for rejecting the claimant's specific symptom testimony.  *See id.* (citing *Brown-Hunter*, 806 F.3d at 494).

Applying the holding of *Brown-Hunter* to the facts of this case similarly warrants the conclusion that the Decision suffers from the same legal error because

11

the ALJ rejected Plaintiff's testimony without outlining which testimony was inconsistent with the record.  As in *Ignacio*, the ALJ here offered only in general terms the testimony he considered incredible, *i.e.*, Plaintiff's testimony regarding "the intensity, persistence, and limiting effects of . . . her symptoms" and Plaintiff's "reported difficulty with concentration, memory problems, insomnia, and resulting inability to function."  ECF No. 11-3 at 23.

It is clear from the ALJ's Decision that his determination of Plaintiff's RFC (and his resulting determination that Plaintiff is not disabled) was based on at least a partial rejection of Plaintiff's testimony regarding her insomnia.  But the ALJ did not indicate which of Plaintiff's various statements about her insomnia he rejected. *See generally id.* 17–27.  Given that Plaintiff made multiple references to her insomnia at the administrative hearing, *see* Section I, *supra*, the Court can only speculate as to which statements the ALJ believed and which he did not.  Even if the ALJ had identified which of Plaintiff's statements about her insomnia he did not find credible, the Court would be left to guess which of the contrary medical evidence cited by the ALJ relates to Plaintiff's insomnia, and which relates to her concentration and memory problems.

The Commissioner argues that *Brown-Hunter* is inapposite and that the Court should instead follow *Madrid v. Colvin*, Case No. 14-cv-05380-BLF, 2016 WL 1161978 (N.D. Cal. Mar. 23, 2016), and *Vahey v. Saul*, Civ. No. 18-00350-

ACK-KJM, 2019 WL 3763436 (D. Haw. Aug. 9, 2019), both of which involved

adverse credibility determinations regarding a claimant's symptoms. *See* ECF No.

16 at 22.  But neither case is on point.

In *Madrid*, the ALJ rejected the plaintiff's testimony regarding her difficulty

using her hands and performing routine daily tasks by identifying contrary

evidence in the record.[3]  *Madrid*, 2016 WL 1161978, at *8–10.  But unlike the ALJ

in *Madrid*, the ALJ here did not specify the particular testimony that he found not

credible and did not link that particular testimony to the contrary medical evidence.

In *Vahey*, the court explained that "[a]n ALJ need not address every aspect

of a claimant's testimony to find him not credible."  *Vahey*, 2019 WL 3763436, at

*23 (citations omitted).  While this is of course true, the law is nonetheless very

clear — and *Vahey* does not suggest otherwise — that the ALJ must identify which

portion of a claimant's testimony he or she finds not credible in order to reject the

claimant's symptom testimony.  Here, the Court cannot discern from the Decision

---

[3]  Specifically, the District Court affirmed the ALJ in part because:

> The ALJ also observed that although Plaintiff testified that she
> has trouble performing routine daily tasks, she "also indicated that she
> can do chores around the house, grocery shop, drive, and prepare meals,
> and she has told various treatment providers that she folds laundry,
> exercises, walks with her granddaughter, takes care of her daughter."
> The ALJ supported this statement with a string citation to record
> evidence.

*Madrid*, 2016 WL 1161978, at *8 (citation omitted).

13

whether the ALJ rejected all of Plaintiff's testimony regarding her insomnia, or just certain portions of her testimony.  And if it was the latter, the Court is unable to determine which specific portions of Plaintiff's testimony the ALJ rejected.

The ALJ's legal error here was not harmless because the Court is left without the ability to review whether the ALJ provided clear and convincing evidence as "the ALJ never identified *which* testimony []he found not credible, and never explained *which* evidence contradicted that testimony."  *See Brown-Hunter*, 806 F.3d at 494 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)).

## B.   Plaintiff's Testimony Regarding Her Tardiness

Plaintiff asserts in a header in her Opening Brief that the ALJ erred in concluding that Plaintiff is not disabled because the ALJ improperly rejected Plaintiff's testimony that "she *would* likely be up to three hours late to work at least three days per month."  ECF No. 14 at 13 (emphasis added).  While the Court has already addressed the ALJ's failure to identify which portion of Plaintiff's testimony he found not credible and why, *see supra* Part III.A, the Court nonetheless addresses the Commissioner's response that Plaintiff mischaracterizes her testimony at the hearing before the ALJ as Plaintiff did not actually testify that she *would be* three hours late at least three days a month, but merely testified that

she *had been* that tardy at her previous job several years before the Disability

Period.  ECF No. 16 at 5–6.[4]

The Court agrees with the Commissioner that at no point did Plaintiff say

that she would be three hours late to work three times a month at present, or, more

importantly, during the Disability Period.  The Court therefore rejects Plaintiff's

argument that the ALJ necessarily discredited Plaintiff's testimony regarding her

chronic tardiness *prior to the Disability Period* in order to conclude that Plaintiff is

not disabled.

The Court also rejects Plaintiff's argument that the ALJ improperly

discredited her testimony that she would "probably not [be] on time" to any job.

First, as discussed, the ALJ did not identify which portions of Plaintiff's testimony

he found incredible, so it is impossible to say that he discredited any specific

testimony.  Second, Plaintiff fails to explain how her testimony that she would

"probably not [be] on time" to any job means that she could not sustain any job in

the national economy.  Indeed, the vocational expert's testimony regarding the

unavailability of sustainable jobs was quite narrow, addressing only a person who

---

[4] Although Plaintiff fails to respond to this argument in her Reply Brief, *see generally* ECF No. 21, Plaintiff's Opening Brief does quote at length the ALJ's colloquy on this issue, *see* ECF No. 14 at 15–16, and its summary of the colloquy is accurate:  "The ALJ elicited testimony from [Plaintiff], asking her if she would be able to arrive at a workplace regularly, to which [Plaintiff] stated she could not do so on time, and in her last job she would be up to several hours late at least three times per month[.]"  ECF No. 14 at 15.

would be up to three hours late to work about three times per month.  ECF No. 11-3 at 61.

## C.    Remedy

As the arbiter of credibility, the ALJ exclusively makes determinations; courts are limited to reviewing those determinations.  *See Brown-Hunter*, 806 F.3d at 494.  Because the Court cannot speculate about the ALJ's bases for his conclusions or substitute the ALJ's conclusions with its own in deciding whether substantial evidence supports the ALJ's Decision, the ALJ's credibility determination must be reversed and remanded.  Only after that issue is resolved can a determination be made about whether the ALJ's RFC determination is proper.

//

//

//

//

//

//

//

//

//

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's Decision denying Plaintiff's application for social security disability benefits is REVERSED.  This case is REMANDED for further administrative proceedings consistent with this Order. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, March 16, 2021.



Jill A. Otake
United States District Judge

CIVIL NO. 20-00264 JAO-RT, *Wickliff v. Saul*; ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS